Good morning, Your Honors. May it please the Court, my name is Jessica Chan of the firm of Covington & Burling, and I represent the appellant Pierre Hoffman in this appeal. I'd like to reserve three minutes of my time for rebuttal. The District Court committed a number of reversible errors and deprived Mr. Hoffman of a fair trial. First, the District Court gave an explicit deference instruction to the jury, an instruction that has no place in a medical needs case. No Supreme Court case and no published case by this Court has ever held that a deference instruction is required or appropriate in a medical needs case. Instead they've never held that it's required. The question is, is it appropriate? And if we have these cases that say medical care relates to conditions of confinement, and in that case, why would it be an error, then, to give such an instruction? The Supreme Court has consistently held that the provision of medical care does not ordinarily compete with administrative concerns such as safety and security. And this Court, in fact, has repeatedly held that no deference should be paid to prison officials in determining whether a prison official has acted with deliberate indifference to an inmate's serious medical needs. This is a prison setting, and so some general deference should be paid to prison officials on matters of discipline and security. I'm troubled by one thing. I grant you that Norwood raises some interesting questions here and maybe some other authorities, but this is a supervisor. This is somebody that's way up the chain. I know there's an allegation that he personally directed these sorts of things, but on the other hand, there was clearly evidence that came in that indicated that your client was treated for all kinds of things, some of them far less serious than neurogenic, urinary, and bladder problems. Why would Dr. Lee bother to take care of those other issues and yet not take care of this one? And, Ashley, that is one of the errors that the district court committed in this case, allowing evidence of Mr. Hoffman's other conditions. Mr. Hoffman's receipt of adequate medical care for his other conditions has nothing to do with his urinary condition in this case. Well, does that make any sense? I mean, the testimony that was let in, admittedly, was an expert witness question back and forth, but the reality is this is a guy who has a problem, and there are different ways to take care of it. And there were some selections. He was given some choices. He chose certain things. And that showed care, showed some involvement. Not the way he wanted, ultimately, I gather, but it showed some care. There's no requirement in our circuit that a doctor who's a percipient witness cannot give testimony, is there? No, there is not. However, other circuit courts, that is what happened here. Dr. Milanese was a percipient witness. He was not disclosed as an expert witness according to Rule 26 or Federal Rule of Civil Procedure 26A2A. But as a lay witness, he was not qualified to give opinions about the propriety of care that was given to Mr. Hoffman by other physicians. And in this case ---- But did your client object? My client did object on two of the three occasions. In fact, on one of the occasions, that was classic expert opinion testimony. Dr. Milanese testified that the indwelling catheter is an appropriate form of treatment for Mr. Hoffman's neurogenic bladder dysfunction. He also testified that the indwelling catheter, if worn for more than one year, was not problematic. He was not the urologist that diagnosed Mr. Hoffman with his condition. Neither was he the doctor who prescribed him with that treatment. So this was classic expert opinion testimony. He was opining about the standard of care that was provided by another physician. And did your client put on expert testimony that was to the contrary? Well, that is exactly why, in this case, Dr. Milanese's testimony was so prejudicial. Mr. Hoffman had no way of knowing that Dr. Milanese would be giving these opinions. And, in fact, the Seventh Circuit has noted in Musser v. Gentita Health Services that that's precisely the reason why parties are required to disclose experts according to the rule. It's not a pointless formality. It allows the other side to schedule additional depositions in order to tease out the opinions. It allows the other side to properly prepare for cross-examination. It also allows the other side to present rebuttal testimony if necessary. But in this case, Mr. Hoffman had no reason to know that Dr. Milanese would be giving these opinions, and that's exactly why this evidence was prejudicial. Let's say for a moment, say that the other circuits have indeed so ruled and that we are persuaded by that reasoning. That would be very helpful to you. But if we're not, and if the testimony stays, doesn't that completely undercut your client's claim that, in fact, this was substandard care? In fact, all they were doing was giving your client a choice as to which of these methods he preferred. And we're talking about Dr. Milanese's testimony about the treatment of Mr. Hoffman? That's correct. Well, in this... That is, in fact, the condition about which your client complained, right, with respect to Dr. Lee? But that's... That he wasn't properly treated? Exactly. And that's exactly why the evidence of Mr. Hoffman's other conditions was so prejudicial. Dr. Lee should not be let off the hook for allowing Mr. Hoffman's condition to deteriorate simply because he treated Mr. Hoffman's other conditions. Okay. Well, forgive me. I'm perhaps getting you off on the wrong track here. We've talked about that to start with, but then we started talking about Dr. Milanese's testimony, in which he did, in fact, talk about the neurogenic bladder issue. And his testimony, if I recall correctly, was that your client was told you could either do this with an indwelling catheter or through the, what do they call it, suprapubic catheter, and that either one is perfectly acceptable. And he chose one, and that was it. But he was treated. So if that testimony stays in, if we don't create a new rule in our circuit that conforms to one of another circuit, then, in effect, your client loses, doesn't he? The problem with that testimony is that that is not the opinion that Dr. Milanese held at the time that he was treating Mr. Hoffman. And, in fact, he testified at trial that the indwelling catheter was not an appropriate form of treatment  Why isn't that just classic basically impeaching himself and having conflicting testimony? I mean, I just saw it as goes to the weight, not to the admissibility. And the jury got to hear that he flip-flopped from A to B. Why doesn't that just come in and they put it into their mental computer and figure out what weight to give him? Sure. And that's exactly what Mr. Hoffman could have done. He could have, for instance, cross-examined Dr. Milanese and shown the jury that he was providing conflicting testimony. But in this case, Mr. Hoffman had no idea that Dr. Milanese was going to be making these opinions in the first place. And so, as we discussed before, the trial is an organic deal. You don't know what's going to come out of people's mouths. But he knew what he'd said before, correct? He did know what he said before. And then now he's on the stand and he's saying, here he says A and now he says B. And Mr. Hoffman's trial counsel was surprised by that testimony. Right. And then you say, Doctor, you know, X number of months ago, didn't you put this into your document and wasn't that your opinion? Yeah. And now today your opinion is this? That's a change of opinion? Yeah. Thank you. You know, I mean, that's – I just didn't see what was unusual about this testimony since they already was on record on this point. That's true. And Mr. Hoffman's counsel could have done a better job at cross-examining Dr. Milanese as to that point. But the fact of the matter is, is that it's the district court's responsibility to have limited Dr. Milanese's testimony only to what he knew and what he did during his treatment of Mr. Hoffman. So your point is that he ended up being an expert witness without any notice at all or any opportunity to depose him or get another answering expert, right? That's correct. That's exactly our position in this case. And let me take you back to the deference question for a minute. Aren't there similar considerations here as in security situations, planning, transport, taking people, especially taking people outside the prison and getting outside consultants or doctors? I mean, aren't they very similar to other conditions of confinement concerns? And that's precisely the point that I was getting to next, which is that this is a prison setting, and so Mr. Hoffman is not saying that no deference should be paid at all to prison officials on matters of security and discipline, but just that such a general deference is already incorporated into the deliberate indifference standard. So the question here is whether additional deference should be given to prison officials on matters of discipline and security in a medical needs case. And the answer to that question is no. Requiring a deference instruction in such cases would reduce the Eighth Amendment right to medical care to a nullity, would prevent plaintiffs from bringing valid claims, and prison officials would be able to come to trial and simply utter the words safety and security and thereby escape liability. That's why the district court committed a reversible error in this case. Going on to the next issue on appeal, the district court's refusal to instruct the jury on Mr. Hoffman's First Amendment supervisory liability claim was simply wrong. There was sufficient evidence on the record to instruct the jury on this claim. In the court conference in which the parties discussed the proposed jury instructions, the district court stated that the only evidence of Dr. Lee's involvement in violating Mr. Hoffman's First Amendment rights was that he had ordered his staff to ransack Mr. Hoffman's cell. But that's precisely the evidence that supports a supervisory liability claim here. By not or failing to instruct the jury on this claim, the district court effectively improperly stripped the jury of the chance to find in favor of Mr. Hoffman. This is a straightforward issue, and this court should not hesitate to reverse the district court here. Would you remind me what the evidence was kind of in a temporal sense and factually of the retaliation? Sure. And I'll just give one very vivid example here. In September of 2007, Mr. Hoffman's cell was ransacked by Dr. Lee's staff. He filed a grievance against the staff who had ransacked his cell. He also sent a personal letter to Dr. Lee complaining of this incident. Two months later, when his suprapubic tube came out of his pelvic opening and urine was pouring out of his body, the same nurse who had ransacked his cell left him untreated for hours while this was going on. His pelvic opening soon closed. Dr. Lee was present during this incident but failed to do anything about it. So in this case, you know, one of the elements for a retaliation claim that's disputed in this case, because it's not disputed that Mr. Hoffman engaged in protected speech or that Dr. Lee and his staff failed to provide adequate medical care, is whether or not his protected speech was a substantial and motivating factor for Dr. Lee's and his staff's actions. Well, a jury could have found that Mr. Hoffman's filing of that grievance against the nurse was a substantial and motivating factor for the nurse's behavior. What was the timing again? It was two months. Let me ask you a question here, though. I take your point about Corrales and so on in terms of the instruction, but I wonder whether this wasn't harmless because the district court did instruct the jury as to the First and Eighth Amendment claims and also under the Eighth Amendment claim gave an alternative instruction of supervisory liability. It included all of the elements that you're asking for, and perhaps most importantly, the jury returned no to the question number five in terms of the results, and the question was did plaintiff Pierre L. Hoffman prove by a preponderance of evidence that Dr. Charles Lee was a supervisor who knew or reasonably should have known that the subordinates retaliated against plaintiff for exercising his constitutional rights protected by the First Amendment to the Constitution of the United States but failed to prevent the subordinates from doing so, and their answer to that was no. So they clearly considered it, and they said no. Isn't that harmless error? The claim did appear on the verdict form unintentionally. However, neither Dr. Lee's counsel nor I have been able to locate any authority for the proposition that a verdict form substitutes for proper court instruction. And in fact, if you compare Mr. Hoffman's proposed instruction on the supervisory liability claim, which appears at ER 505 with what actually appeared on the verdict form at ER 39, you'll see that the verdict form was woefully inadequate at instructing the jury as to the elements of the claim. Do you agree that jury instruction matters can be, there can be harmless error? There can be harmless error, but in this case it was harmful to Mr. Hoffman's case. Even though the jury said they didn't believe that he had in fact retaliated? The point here is that the district court refused to instruct the jury as to the required elements, so the jury was deciding the claim in a vacuum. The jury had no idea exactly under what circumstances Dr. Lee could be held liable as a supervisor, and there were three different contexts. And only one of those three contexts was actually stated in the verdict form. It said nothing about the other two. I see that I'm running out of time, and I'd like to reserve some time for rebuttal. You've used all your time, but I will give you, as I explained to people at the beginning, when you run to the red clock, that's the end of your time. I understand, Your Honor. All right. Thank you very much. May it please the Court, my name is Harry Gower. I'm representing the appellee, Dr. Charles Lee. During the period in question, the trial record shows that Mr. Hoffman made over 60 requests for medical services or for accommodation of his medical needs, like for a lower bunk, things of that nature. Thirty-two of those requests were related to his urological condition. He clearly wasn't happy with the level of service provided him, but the record shows he was never denied treatment. He was presented with several options for his condition, and he chose one, installation of a suprapubic catheter, and he got it. The eight jurors heard five days of testimony about this case. They came back with a unanimous verdict in Dr. Lee's favor. The district court did not abuse its discretion either in the evidentiary rulings or in its instructions. Could you comment on the question that I ask your opposing counsel? Well, it is true under Corrales, in our case law, that there is supervisory liability that can attach to somebody as a result of one directing subordinates to carry out a violation. But there was, in fact, an instruction of the jury on the First and Eighth Amendment claims. Do you believe that the jury instructions that were given contained all of the essential elements that would have been included in the instruction that was requested by opposing counsel? I do. And also, as the Court noted and as I noted in my papers, the jury was also presented with the question on the verdict form to consider that question. And in a case cited in the appellant's reply brief, that's the Pulido v. Crohn's case, 629F3rd, 1007. At page 1016, the Court states it's entirely appropriate to consider the verdict form in conjunction with the jury instructions and the trial record as a whole. It goes on to say the verdict form is especially relevant because verdict forms are, in essence, instructions to the jury. So the jury, as I argued in my papers, once they'd been instructed on both the First Amendment retaliation claim and the Eighth Amendment claim, they'd been sufficiently instructed as far as the doctor-lease-direct liability. The Court was correct that there was no evidence about his supervisory liability. The instance that counsel quoted about when his suprapubic catheter became dislodged, says the evidence was that Dr. Lee was present. Dr. Lee was not present. The plaintiff believes that the doctor who was present went to talk to Dr. Lee on the telephone, but Dr. Lee said that never happened and Dr. Melanesa said, no, that was, in fact, me he was talking to on the telephone. So once the jury had determined that there was no First Amendment retaliation on Dr. Lee's part, first of all, I think the Court was correct. There was no evidence supporting the supervisory instruction. Second, once they determined that Dr. Lee had no, had not retaliated at all, I think that instruction became superfluous. And if there was an error, it was harmless because they examined the question anyway and they decided in Dr. Lee's favor. Let me ask you something in terms of the surprise. Opposing counsel mentioned that there was a big surprise that Dr. Melanesa had been able to testify about matters that he might ordinarily have been, had to be qualified as an expert. But according to what I see at ER 525 through 27, there was, in fact, a motion in limine number 6 that was requested by Mr. Hoffman to exclude all evidence of treatment unrelated to Hoffman's bladder condition. So let's start with that. The district court denied the motion. When was that motion in limine made vis-a-vis the rest of the trial? Do you recall? I was not the trial attorney. As my understanding, those rulings were made prior to the trial. At the beginning. Okay. So at the very least, counsel would have known that there was going to be some evidence coming in about matters other than his bladder condition, right? Yes. You know whether there was any, whether there were any motions in limine related to Dr. Melanesa in any form or anything related to his testimony? You know, I'm not sure, but I think there was. I think that had been, that had certainly been discussed prior to his appearance at trial. I can't recall if there was a formal motion, but they definitely discussed it off the record prior to his showing up. That's always a problem when people discuss things off the record. I'm sorry. Because then we can't see them. I didn't, I meant outside the presence of the jury. Okay. It was on the record. But what is your response that really he was testifying beyond his treating physician scope and he basically turned, you know, while he might have been an expert doctor, he turned himself into an expert witness without appropriate notice? I don't think that's correct. I think as the court, the trial court recognized he was testifying about the judgments he was making at the time. For instance, when he was questioned about the installation of the Foley catheter, I mean, that's a judgment he has to make while he's treating him. You know, I can see this man wants something else, but he has a Foley catheter. Is that appropriate? Is that a problem? Is that something I need to address right away, or can I leave it in until it's time for his surgery? And those are the medical judgments that he's making at the time, and that's what he was asked about. Let's assume for a moment that it would have been better practice to qualify him as an expert witness. He was a urologist, right, a specialist urologist. Did that ever come in in the testimony? I don't know if that's in the record that was presented to this court, but it was discussed at the trial. Okay. We have a case, United States v. Mendoza, which, at least to me, suggests that it's harmless error. If he could have been qualified as an expert in urological matters, had that been chosen? Do you know anything about that case? Do you have any comment about that case? I'm sorry, Your Honor. Okay. All right. Well, I mean, it's not a question of was he qualified. The real issue here is surprise, not qualifications. So I think that counsel's argument was that trial counsel was surprised because they don't know the scope of his testimony beyond his treatment. And you're saying that it was all part of the treatment? Well, that's – first of all, the trial counsel was certainly aware of this and alerted the trial court, we need to limit this witness's testimony to, you know, he's a precipient witness. And the judge said, I'm going to deny your motion to eliminate, but you can certainly make objections as the testimony goes along. So the trial court was alerted to the fact that this was an issue with which the plaintiff was concerned. And I think I just lost track of your question. I'm sorry. We're talking about the surprise issue. Well, you know, I'm – That really is, I think, what counsel's arguing. You know, I mean, as the Court pointed out, you know, every trial attorney is surprised by something that happens at trial. But isn't that one of the purposes of the discovery rules that you try to minimize that so that the other side can be prepared either by calling its own witness or by preparing a better cross-examination? That's true. But they did have their own witness, their own medical witness on the one hand. And on the other hand, they objected where they thought necessary in Dr. Milanesa's testimony. And the judge, I think, properly disagreed with them, that Dr. Milanesa was just testifying about the judgments he formed about this man's treatment and the treatment he was going to receive from him at the time. That's all he testified about. So you're basically saying he didn't testify outside of his treatment and didn't become an expert witness, is that what you're saying? That's correct. That's correct. If I may, I just want to respond to your arguments about the deference instruction. First of all, I certainly don't think it's an abuse of discretion for a trial court to rely upon the Ninth Circuit model civil jury instructions. And that's the instruction that this does. Well, what if it's a bad instruction? Well, but, you know, I think the trial judge is entitled to rely upon it. I don't think it's a bad instruction in the sense that, you know, Well, if you look at the cases cited, starting with the Whitley v. Albers case, that's the Supreme Court case 475 U.S. 312, the issue in that case really was whether the deliberate indifference standard was appropriate in the context of a shooting during a prison riot. And the court thought that in that case that standard, the deliberate indifference standard did not adequately capture all the competing concerns that might present themselves in a situation like that. The court did note that in medical cases typically the institutional concerns might not apply. But the court did not say that they would never apply, and the court did not say that such a deference instruction should never be given. But isn't this really a medical malpractice case? I mean, why should there be any deference in this situation if, and I'm not saying it was the case, because, you know, if there was medical malpractice here, if they ignored him, if there was deliberate indifference, then why should there be a deference instruction? Well, because we're talking about a prison here. And, in fact, this prison was a level 4 high security institution. And there was a lot of evidence at trial about the difficulties in obtaining and scheduling treatment that such an environment presents. You know, it's just not the same as driving down to Kaiser when you have a problem. I mean, taking these people outside the walls, especially outside a level 4 prison, it's outside the walls when they have the greatest opportunity to escape. The security concerns are enormous, and there was a lot of testimony about that and about why often a prisoner can't get treatment immediately. Dr. Lee testified about how he meets with the warden every day to talk about these scheduling issues, about who can go out, what guards are available to watch and what transportation is available, things of that nature. So I just don't believe, I don't agree with the counsel's statement that a deference is incorporated in the deliberate indifference standard. I mean, clearly, many plaintiffs prevail on a deliberate indifference standard. Even, you know, and the fact of deference to the, you know, I mean, it can be proved even over a deference standard, I guess is what I'm saying. And I'm just about out of time. If the Court has no more questions, I'll submit. Thank you. Thank you. We'll give you some extra time for rebuttal. Why don't you put a minute and a half on the clock so she has some time for rebuttal. Thank you, Your Honor. I'd just like to make a few quick points. With respect to the fact that the district court relied on the model civil jury instructions, this Court has held in Dang v. Cross that reliance, the district court's reliance on such instructions does not preclude a finding of error. And as this Court knows, the instructions are drafted by a panel of district and magistrate judges. They're neither drafted by this Court or approved by this Court. And, in fact, the preface to those instructions state that the instructions are sometimes the subject or focus of an opinion by this Court as to their correctness. Also, with respect to the ---- And on occasion, we say they're bad instructions. Exactly. And on occasion, you do say that they're bad instructions. Also, with respect to Dr. Lee's counsel's point about safety and security concerns in a prison, of course those concerns are always going to be apparent, and we must take that into consideration. However, in this case, there's no evidence that safety and security actually impeded Dr. Lee's ability to provide adequate medical care to Mr. Hoffman. And as I said before, any general deference that should be paid to prison officials is already incorporated into each of the standards that apply to each of the Eighth Amendment contexts. This is a case about medical needs. It's not a case about safety and security. And lastly, with respect to the First Amendment liability claim, Dr. Lee's counsel talked about Polito v. Crohn's, which is a case that says that verdict forms can cure deficiencies in instructions, but it says nothing about the verdict form being able to substitute for a proper court instruction. And as I said before, there were three different contexts in which Dr. Lee could have been found liable as a supervisor, and the verdict form only talked about one of the three, which is that Dr. Lee knew or should have known that his subordinates were violating Mr. Hoffman's rights, but he did nothing about it. It said nothing about the other two contexts, and I would refer the Court to Mr. Hoffman's proposed jury instructions at ER 505 for those other two contexts. To conclude, Mr. Hoffman has already lost all bladder function and any remaining dignity as a result of the actions of Dr. Lee and his staff. This Court cannot restore either of those two things for him. This Court can only provide him with a new trial in which the jury is presented with the appropriate evidence and instructed according to the correct law. And that's all that Mr. Hoffman asked for today. Thank you very much. Thank you. I'd like to thank both counsel for your arguments this morning. I also would like to thank you, Ms. Chan, for participating in the Court's pro bono program. It's always easier for the Court and even for opposing counsel to have a counseled case argued. We appreciate your participation. Of course, also yours, Mr. Gower. The case of Hoffman v. Lee is submitted.
judges: Rothstein, McKeown, Smith